594 P.2d 533

In the Matter of the Appeal in MARICO-
PA COUNTY, JUVENILE ACTION
NO. J–81405–S.

No. 1 CA–JUV 56.

Court of Appeals of Arizona,
Division 1,
Department C.

Feb. 7, 1978.

Review Granted March 14, 1978.

Charles F. Hyder, Maricopa County Atty., Alan W. Johnson, Deputy County Atty., Juvenile Div., Phoenix, for appellee.

Gary Peter Klahr, Phoenix, for appellant.

### OPINION

OGG, Judge.

The determinative issue presented in this appeal is whether the county attorney's office has authority to file a juvenile petition after the juvenile probation department has accepted the juvenile referral or complaint and has proceeded to hold the case for adjustment.

On April 5, 1977, the Phoenix Police Department sent a referral to the Maricopa County juvenile court, alleging that the juvenile herein had disturbed the peace. The county attorney and juvenile probation office were also notified of this referral. The probation officer determined that he would hold the referral for possible adjustment under 17A ARS Juv.Ct.Rules of Proc., rule 2. Nevertheless, on April 27, 1977, the county attorney filed a petition in juvenile court against the juvenile. As is the practice and procedure in the Maricopa County juvenile court,[1] no judicial approval of the

filing of the petition was sought or secured, and the judicial process was begun merely by filing the petition "across the counter" with the clerk of the superior court. A hearing was conducted on September 7, 1977, at which the court made an adjudication that the juvenile was in violation of probation and a delinquent child. The juvenile now appeals that determination, claiming the county attorney was without authority to file a petition when the probation officer declined to do so.

We view this case as a request from all parties for a decision of whether the county attorney's office or the juvenile probation office, under the control of the juvenile court, has the exclusive authority to determine if a juvenile court proceeding should be initiated.

There is no indication in the record before us that the juvenile judge who made the adjudication of delinquency directed or participated in the initial determination of who should initiate this proceeding. The pertinent provisions of the juvenile code are not clear on this point and have not been interpreted previously by this court. In construing these provisions we must be mindful that the juvenile justice system is unique, having its own purpose and procedure. A juvenile proceeding is neither criminal nor penal and its objective is to protect or rehabilitate the child. *Arizona State Department of Public Welfare v. Barlow*, 80 Ariz. 249, 296 P.2d 298 (1956). It is the welfare of the child that is the prime consideration of the juvenile code. *In Re Pima County Juvenile Action No. J–31853*, 18 Ariz.App. 219, 501 P.2d 395 (1972). Accordingly, prior to 1970, the county attorney had virtually no role in the juvenile justice process. All juvenile matters were generally conducted by the juvenile department under the supervision of the juvenile court. However, in 1970 the juvenile court procedures underwent significant changes. The Arizona Supreme Court enacted Rules of Procedure for the Juvenile

---

1. It appears that juvenile practice and procedure varies in all of Arizona's 14 counties, depending upon needs, personnel and facilities.

See, Special Project, *Juvenile Justice in Arizona*, 16 Ariz.L.Rev. 234 (1974).

Court which became effective April 15, 1970, and the legislature approved a new juvenile code on May 19, 1970, effective August 11, 1970. The provisions of these two enactments are the basis of the litigation before us.

The pertinent provisions of the new codes are:

ARS § 8–205. Powers and duties of juvenile court personnel

For the purpose of carrying out the objectives and purposes of this chapter, and subject to the limitations of this chapter or as imposed by the juvenile court, an authorized juvenile court officer shall:

1. Receive and examine complaints involving an alleged delinquent or incorrigible child for the purpose of considering the commencement of proceedings under this chapter.

2. Perform other duties as required or prescribed by the presiding judge of the juvenile court.

3. Have the authority of a peace officer in the performance of his duties.

4. Receive petitions alleging a child or children as dependent and transmit such petitions to the juvenile court.

Added Laws 1970, Ch. 223, § 2, eff. Aug. 11, 1970, as amended Laws 1972, Ch. 114, § 4.

&ast; &ast; &ast; &ast; &ast; &ast;

ARS § 8–221. Commencement of proceedings

A proceeding under this chapter may be commenced by one of the following procedures:

1. By transfer of a case from another court as provided in § 8–222.

2. By the filing of a petition in accordance with the rules of procedure of the juvenile court.

Added Laws 1970, Ch. 223, § 2, eff. Aug. 11, 1970.

17A ARS Juv.Ct.Rules of Proc. rule 1:

. . . The word 'adjusted' as used herein means the handling of a juvenile referral or complaint in a manner which obviates the necessity of filing a petition.

17A ARS Juv.Ct.Rules of Proc., rule 2: Pre-petition Investigation and Adjustment

(a) Any complaint of delinquent conduct filed by an individual or agency shall be in writing, signed by the person responsible for the filing, setting forth facts with sufficient clarity and specificity to reasonably apprise the court of the acts of the child. Upon receipt thereof the complaint shall be referred to the juvenile probation officer assigned by the court to receive such matters.

(b) The juvenile probation officer shall make a record of the complaint and investigate the matter to determine whether the facts, if true, are sufficient to bring the child within the court's jurisdiction, and whether they appear serious enough on their face to warrant some form of court action. If the facts are insufficient to meet the foregoing conditions, the complaint may be *adjusted.*

(c) If a child has acknowledged his responsibility for the delinquent act and the juvenile probation officer has found from his investigation of the child's total circumstances that court action is not necessary, the child may be referred to other agencies or to the parents, guardian or custodian for corrective action, and the complaint adjusted.

&ast; &ast; &ast; &ast; &ast; &ast;

ARS § 8–233. County attorney

A. The county attorney shall:

1. Direct such investigation he deems necessary of acts of alleged delinquent behavior;

2. Cause petitions alleging delinquent behavior to be drafted and filed with the juvenile court as he deems necessary in the public interest; and

3. Attend the juvenile court within his county and conduct on behalf of the state all contested hearings involving allegations of delinquent acts or incorrigibility.

B. In a juvenile court hearing where the child who is the subject of the petition not alleging a delinquent act or incorrigi-

282

bility is represented by counsel in a contested matter, the county attorney shall, when requested by the juvenile court judge, appear and participate in the hearing to assist in the ascertaining and presenting of evidence.

Added Laws 1970, Ch. 223, § 2, eff. Aug. 11, 1970.

■ We think a fair interpretation of these provisions is that the decision to initiate a juvenile court proceeding is within the exclusive domain of the juvenile department. We base this decision on the following factors. As stated above, juvenile matters have traditionally been conducted principally by the juvenile probation office. The Supreme Court rules do not change that situation. Similarly, while the legislature modified the juvenile code, the juvenile department still has the predominant role. Thus, ARS § 8–205 provides for the juvenile probation officer to receive and examine complaints involving children for the *purpose of considering the commencement* of juvenile proceedings. Moreover, § 8–221 provides that the proceedings may be begun by either a transfer of a case from another court or *by filing a petition in accordance with the rules of procedure of the juvenile court.* Rule 2 of those rules states that the probation officer is to conduct an investigation to determine whether the facts, if true, are sufficient to bring the child within the court's jurisdiction or whether the case should be adjusted. Since rule 2 was enacted prior to the 1970 code changes and § 8–221 specifically refers to the Supreme Court rules for the juvenile court, we think the legislature intended the juvenile department to have exclusive control in initially determining if a petition is to be filed.

The state takes the position that rule 2 is not decisive in this case. It argues that by the provision in § 8–221 that commencement of a juvenile court action is to be in accordance with the rules of the juvenile court, the legislature simply meant that the petition shall be filed pursuant to the "legal machinery" of the juvenile court, such as 17A ARS Juv.Ct.Rules of Proc., rule 4 (Contents of Petition) and rule 5 (Citation to Parents, Guardian or Custodian).

We cannot agree with the state's contention that the legislature did not intend that rule 2 govern the commencement of the juvenile court actions. As noted above, the Supreme Court rules became effective prior to the date the legislature approved the new code. There is no indication that the legislature meant to refer to rules 4 and 5 but not to rule 2. In fact, in § 8–221, the legislature specifically states that the *commencement* of a juvenile action is by filing a petition in accordance with the rules of procedure of the juvenile court. We think this demonstrates the legislature's intent to incorporate the Supreme Court commencement rule. The state argues, however, that § 8–233 specifically demonstrates a contrary intent. We disagree. In our opinion, § 8–233 does not specify how an action commences but instead provides that the county attorney has the authority to draft and file petitions, or decline to do so, after the probation officer refers the case to him. A closer question would have been presented had the legislature not specifically referred to the Supreme Court rule and had enacted its own commencement provision.

■ The state next argues that the rule 2 commencement provision cannot be given any force and effect since it is a substantive rather than procedural rule and the Supreme Court has no authority to promulgate substantive rules. While we agree that the Supreme Court cannot enact substantive rules, we hold that the principle is inapplicable under the present circumstances. Substantive law is that part of the law which creates, defines and regulates rights; procedural law is that which prescribes the method of enforcing the right or obtaining redress for its invasion. Procedural law prescribes the practice, method or legal machinery by which the substantive law is enforced. *State v. Birmingham,* 96 Ariz. 109, 392 P.2d 775 (1964). Accordingly, the disturbing the peace law under which the juvenile was charged is substantive law but the rules or legal machinery utilized to enforce that law are procedural. We hold, therefore, that the rules prescribing how a

juvenile action is to be commenced are procedural. It is axiomatic that even where the legislature has the authority to enact substantive laws, the Supreme Court may prescribe procedural rules. *Gonzales v. Whitney*, 90 Ariz. 324, 367 P.2d 668 (1961); *Burney v. Lee*, 59 Ariz. 360, 129 P.2d 308 (1942). Specifically in *Matter of Maricopa County, Juvenile Action No. JS–834*, 26 Ariz.App. 485, 549 P.2d 580 (1976), this court held that in the juvenile area the substantive right to appeal is a topic solely within the scope of legislative authority but the *procedural* aspects of perfecting and processing such an appeal may be regulated exclusively by the Supreme Court.

■ The state's final contention is that although § 8–205 grants to the juvenile probation officer certain authority, it also subjects that officer to the limitation imposed by the juvenile code and that § 8–233 is such a limitation. Section 8–233 provides that the county attorney is authorized to "[c]ause petitions alleging delinquent behavior to be drafted and filed with the juvenile court as he deems necessary in the public interest . . . ."

The state reasons that this section not only gives the county attorney the right to file juvenile petitions, but also the exclusive right to determine if juvenile complaints or referrals can be held for adjustment by the juvenile probation department.

■ We reject the state's contention that § 8–233 gives the county attorney the exclusive right to determine how juvenile matters should be handled. Such a result would render the juvenile probation office investigation for adjustment useless. The objective of the juvenile court system is to protect or rehabilitate the child and prior to 1970 the county attorney had no designated role in juvenile adjudication. We do not think that a fair reading of the new code reflects an intent by the legislature to make a complete reversal and give the county attorney exclusive authority to decide whether adjustment is appropriate. To do so would be turning back the juvenile court to another era when all juveniles were treated as adults. It would also violate the

well established Arizona rule that the criminal and juvenile justice systems are separate. *Maricopa County Appeal No. J–68100 v. Haire*, 107 Ariz. 309, 486 P.2d 791 (1971). Although the juvenile justice system has not always lived up to its great expectations, we do not believe it should be discarded for the adult criminal justice system with its known inadequacies.

■ The county attorney's authority pursuant to § 8–233 is not a limitation on the juvenile probation officer. We think § 8–233 merely clarifies the county attorney's position in the juvenile process. It does not impose limitations on the probation officer's authority to decide whether a matter should be adjusted or a juvenile proceeding commenced. We note that the legislature's commencement rule, § 8–221, is in Article 2 of the rules of the juvenile court, entitled General Procedure. Also included in that chapter are the provisions pertaining to commencement by transfer from other courts, § 8–222; investigations, § 8–224; and appointment of counsel, § 8–225. The county attorney provision, § 8–233, is located in Article 3 of the juvenile court rules, entitled Juvenile Hearings. The other provisions in this Article include hearing by referee, § 8–231; traffic hearing officer, § 8–232; record of proceedings, § 8–234; and appeal, § 8–236. The divisions made between these Articles reflect the time sequence the legislature apparently intended. Article 2 represents the beginnings of the juvenile process such as commencement of the action and investigation; whereas Article 3 concentrates on the hearing itself. We think this division indicates that the county attorney does not have a role in the juvenile process until after the probation officer has made the initial determination not to adjust a referral or complaint.

· The state relies upon the case of *McBeth v. Rose*, 111 Ariz. 399, 531 P.2d 156 (1975), wherein the court stated: "[t]he decision to file a petition was a matter exclusively for the prosecutor. ARS § 8–233." 111 Ariz. at 403, 531 P.2d at 160.

We think the state has overstated the holding in *McBeth*. In that case the defendant was a juvenile (17 years old) when a petition was filed against her in juvenile court. The county attorney, however, moved to dismiss the action prior to the hearing and the court did so. A few days later, after the defendant's eighteenth birthday, the state filed a criminal complaint identical to the juvenile charges, which had been dismissed. The defendant argued that she was entitled to a transfer hearing before being prosecuted criminally. The court disagreed and stated that when the defendant reached age eighteen she was subject to criminal prosecution, and the juvenile court had no jurisdiction. The court further stated that under those circumstances the decision to file a petition was a matter exclusively for the prosecution.

We do not think that *McBeth* stands for the proposition that the county attorney has exclusive authority to commence juvenile actions. It merely holds that the prosecutor could refrain from acting until the defendant became an adult. The decision not to file a petition or delay in doing so is exclusively the county attorney's once the probation officer has referred the case to him.

In light of the history and purpose of the juvenile justice system and the decision in *McBeth*, we construe the juvenile court procedures for filing formal proceedings as follows. First, the juvenile probation officer conducts an investigation pursuant to § 8–205 and rule 2. Then if an action is to be commenced before the juvenile court, § 8–221 must be complied with. That provision provides that actions may be commenced by transfer from another court or pursuant to the rules of the juvenile court. Rule 2 of those rules directs the probation officer to make an investigation to determine if a court action is necessary. If so, the probation officer may adjust the case or may refer it to the county attorney who, pursuant to § 8–233, has the authority to file the petition or, consistent with the purpose of protecting the child, refuse to file it if not in the public interest. Neither the county attorney nor the juvenile probation officer can force the other to act.

It should be noted that the issue of whether the juvenile judge could have overruled the juvenile probation officer's determination to adjust this case was not an issue before us and we therefore express no opinion on this issue.

The adjudication order is set aside and this matter is remanded for further proceedings consistent with this opinion.

DONOFRIO, P. J., and SCHROEDER, J., concur.